[Civ. No. 21786.   Second Dist., Div. Three.   May 2, 1957.]

DALE D. PEARSON et al., Respondents, v. JEAN CURRY ALLEN, Appellant.

P. E. Durkee for Appellant.

Glenn R. Watson and Robert G. Beverly for Respondents.

SHINN, P. J.—Defendant is the owner of two adjoining buildings located at 1349 and 1353 South Westlake Avenue in the City of Los Angeles. On February 19, 1951, she leased the premises to plaintiffs for a five-year term at a rental of $250 per month "for the purpose of renting rooms and for no other purpose whatsoever." Plaintiffs also agreed to purchase the furniture and furnishings located therein for $5,000. The present action is by the Pearsons to recover damages for fraudulent misrepresentations by defendant who induced them to enter into the transaction. Trial was to the court. The court made findings and entered judgment for plaintiffs in the sum of $4,500. Defendant appeals.

This is a typical case of an appeal in which we are asked to reweigh conflicting evidence and to decide questions of fact to the contrary of the findings of the trial court. Most of the authorities cited by defendant respecting the sufficiency of the evidence would have been pertinent had the trial court found the facts in favor of defendant. If we were a court of last resort we could properly affirm the judgment with the statement that we had read the record and found the evidence to be sufficient to justify the findings that established defendant's liability. But since our decision is subject to review, it is necessary that the material facts, including a sufficient statement of the evidence, be contained in our opinion (rule 29, Rules on Appeal).

The complaint alleged, and the court found, that defendant represented to plaintiffs (1) the average monthly rentals from the premises were $640 per month; (2) the premises were being used and operated lawfully for the rental of housing accommodations; (3) defendant had all licenses and permits required by law for the operation and rental of the premises in the manner in which they were being operated by her. The representations were false; defendant knew they were false; she made them fraudulently; and that plaintiffs relied on them. The court also found: (1) At the time of the execution of the lease, the buildings were being operated as apartment-house hotel combinations without permits from the Board of

Health of the City of Los Angeles; (2) they were being so operated without certificates of occupancy from the city building and safety department; (3) they were being so operated under permits for use as hotels only; (4) prior to the execution of the lease, defendant had converted the buildings from use as hotels to use as apartment-house hotel combinations without obtaining necessary permits; (5) the preceding acts and omissions were in violation of the State Housing Act and the Los Angeles Municipal Code.

Plaintiffs took possession and operated the premises in the manner in which they were operated on February 19, 1951; in November, 1951, the city board of health directed plaintiffs to discontinue operation of the premises as apartment-house hotels until they secured health permits and certificates of occupancy; plaintiffs attempted to secure such permits and certificates but they were denied because of the unlawful use as apartment-house hotels; plaintiffs were prosecuted in 1952 for violations of the Los Angeles Municipal Code in that they were operating the premises without the required permits and certificates; by judgment of the court in November, 1952, plaintiffs were compelled to convert the buildings into lawful dwelling houses containing two apartments and five guest rooms and remove all tenants from those portions of the premises that could not be legally occupied for rental purposes. Plaintiffs removed the tenants. The trial court found that the loss of rentals occasioned by compliance with the 1952 judgment was the sum of $112.50 per month from November, 1952, to February, 1956, or $4,500.

There was evidence of the following facts. Defendant acquired the premises in 1947 from her brother, W. J. Stout, and for some time thereafter they operated them as a partnership. In February, 1951, she employed the Seaton Realty Company to find a lessee for the property and a purchaser for the furniture. At that time, 1349 South Westlake contained five apartments and two guest rooms; 1353 South Westlake contained five apartments and three guest rooms.

An inspector for the city health department and two inspectors for the city building and safety department testified to the particulars in which the buildings were operated in violation of permits and certificates held by the defendant; the violations resulted from the conversion of the buildings from a hotel classification to an apartment house classification without obtaining the necessary building permit and certificate of occupancy. One of the inspectors testified to having noti-

fied Mr. Stout (in whose name the hotel permits were issued) to correct the violations, that Mrs. Allen knew of the same and was notified by the city attorney as early as August, 1948, to correct the conditions.

Plaintiff Dale D. Pearson testified that he and his wife saw Mr. Robert Donnelly at the offices of the Seaton Realty Company on February 12, 1951. Donnelly accompanied them to the premises, where they met defendant and examined some of the rooms. Plaintiffs returned the same evening and looked at the rest of the rooms. Defendant was present part of the time; Mr. Pearson asked defendant whether she had licenses to operate the premises and she said: ''Yes, that everything was in order, that she had run the property for a few years . . . I have all the licenses that are necessary. I have been operating this business for many years.'' He testified that he did not then know what kind of licenses were required to run a hotel and an apartment house. He never saw Mrs. Allen's licenses and although he had rented out rooms before, he had never had a license. He had a conversation with Donnelly who told him that the rent would be $250 per month on a five-year lease, the price of the furniture was $5,000, the total income from the premises was $640 per month, of which about $300 per month should be net income. Donnelly handed Mr. Pearson a prorate rental sheet (prepared from information given by defendant) which Pearson and defendant signed; it disclosed a rental income of $611 per month, one unit on the third floor of 1353 being vacant. Mr. Pearson testified that he believed the representations made by defendant and her agent, relied upon them, and that in the absence of the representations he would not have entered into the transaction.

The premises were inspected in November 1951 by health department inspectors and on November 30th notices were mailed to plaintiffs, instructing them to discontinue the operation of the premises until they obtained health permits and certificates of occupancy. The premises were in the same condition as they were when plaintiffs entered into possession. Pearson was unable to obtain a license from the health department because he did not have a certificate of occupancy, which was refused by the building and safety department because the department demanded that he reconvert the premises into hotels.

Health department officials inspected the property again in June 1952 and found 1349 and 1353 to be still in violation

of the municipal code. In September 1952 plaintiffs were convicted of operating the premises illegally. As a condition of probation they were required to conform to code requirements in their future operations. They vacated the third floors in November 1952 and operated the property as dwellings. Mr. Pearson testified that he lost rentals of $150 per month due to compliance with the court's order.

Defendant contends that the evidence was insufficient to support the findings that she falsely represented that she had the necessary permits and that the rentals were $640 per month as an inducement to plaintiffs to enter into the lease. She denied having made the representations. Mr. Pearson's testimony clearly supports the findings that defendant made the representations, that they were made with the intention that the Pearsons be induced thereby to execute the lease, and that plaintiffs relied on them. ■ It is argued that since the Pearsons inspected the premises before signing the lease they cannot be said to have relied on Mrs. Allen's statements about the licenses and rentals. The argument cannot be maintained. A cursory inspection of the rooms would not have disclosed that the premises were being operated without the requisite licenses; Mr. Pearson testified that he did not know what kind of licenses were necessary and that he never saw defendant's license. The mere examination of the premises by the Pearsons did not charge them with knowledge that Mrs. Allen was violating the law or preclude them from relying on her representations. (*Curran* v. *Heslop,* 115 Cal.App.2d 476, 481-482 [252 P.2d 378].)

■ Defendant contends there was no evidence that she knew her representations to be false or that they were made with an intent to mislead. The argument is without merit. There was evidence that the buildings were converted in 1948 to apartment-house hotels without building permits and that Mrs. Allen was aware of the illegal operation of the premises; she had been ordered to convert the buildings into lawful hotels and admitted to Mr. Pearson in 1952 that her brother had had trouble with the authorities.

Defendant's statements that she had all the necessary licenses were unqualified. ■ The statement that the rentals amounted to $640 per month was based upon current rentals of each rental unit. The falsity of these representations was well established. Instead of revealing these facts to the Pearsons, defendant chose to conceal them. Concealment by a seller of conditions of the property known to be in violation

of law, and which materially affect the desirability of the property, has been held to constitute actionable fraud. (Civ. Code, §§ 1710, subd. 3, 1572; *Barder* v. *McClung,* 93 Cal.App. 2d 692 [209 P.2d 808] ; *Milmoe* v. *Dixon,* 101 Cal.App.2d 257 [225 P.2d 273] ; *Curran* v. *Heslop, supra,* 115 Cal.App.2d 476.)

Defendant's final contention is that her representations as to the licenses were merely representations as to matters of law and cannot be made the basis of liability. We do not agree. We are persuaded that defendant's statements were such as to justify reliance by the Pearsons. Her assertions that she had all the permits necessary for the conduct of the business in the manner in which it was being conducted at the time were statements of fact; they also implied that the manner of her operation of the premises had not been questioned by the municipal authorities although she knew that the facts belied her assertions. She deliberately concealed facts which would have proved her representations to be untrue. The court was justified in finding that defendant made material representations she knew to be false and positive statements of fact not warranted by the information she possessed. This was fraud. (Civ. Code, § 1572.)

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 26, 1957.